UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROBERT COHEN,

        Plaintiff,

v.                                Case No. 3:14-cv-982-J-39MCR

KENNETH TUCKER, etc.; et al.,

        Defendants.

_____

**ORDER**

**I. Status**

    Plaintiff initiated this case by filing a Civil Rights Complaint (Complaint)[1] (Doc. 1), dated August 11, 2014, and filed with the Clerk on August 15, 2014.[2] He is proceeding on a Third Amended Complaint (Third Amended Complaint) (Doc. 72), filed on March 3, 2016, pursuant to the mailbox rule.[3] The Motion to Dismiss by Defendants Regar and Tucker (Motion) (Doc. 111) is

---

    [1] The Court references the pagination assigned by the electronic filing system.

    [2] The Complaint contains a statement providing the date Plaintiff turned the Complaint over to prison authorities for mailing: August 11, 2014. Complaint at 9.

    [3] At the time of the filing of the Third Amended Complaint, Plaintiff was still confined in the Florida Department of Corrections (FDOC). He has since been released from the custody of the FDOC.

before the Court.  Plaintiff filed two responses, (Response One and
Response Two) (Docs. 117 & 118).

## II. Standard of Review

In ruling on a motion to dismiss, the Court must accept the
factual allegations set forth in the complaint as true.  Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009).  In addition, all reasonable
inferences should be drawn in favor of the plaintiff.  See Omar ex.
rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per
curiam).  Nonetheless, the plaintiff must still meet some minimal
pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d
1250, 1262-63 (11th Cir. 2004) (citations omitted).  While
"[s]pecific facts are not necessary[,]" the complaint should "'give
the defendant fair notice of what the . . . claim is and the
grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93
(2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough
facts to state a claim that is plausible on its face."  Twombly, 550
U.S. at 570.  "A claim has facial plausibility when the pleaded
factual content allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  Iqbal,
556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see Miljkovic v.
Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015)
(citation and footnote omitted).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see</u> <u>also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id</u>. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

### III. Third Amended Complaint

Defendants Robert Regar, a corrections officer, and Kenneth Tucker, the former Secretary of the FDOC, filed the Motion. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 against the Defendants in their individual capacities. Third Amended Complaint at 1. In the Third Amended Complaint, Plaintiff raises two claims: (1) Nurse Parrish was deliberately indifferent to Plaintiff's eye condition and denied him medical care in

violation of the Eighth Amendment; and (2) Nurse Parrish, Officer Regar and Officer Joseph conspired to deny Plaintiff medical care by denying him medical emergencies and inhibiting his ability to access medical care for his eye condition because of the Defendants' hatred of Plaintiff's convicted offense.[4] <u>Id</u>. at 5. Plaintiff seeks declaratory relief; compensatory damages of $300,000.00 from each Defendant, jointly and severally; "room and board[;]" punitive damages of $500,000.00 against each Defendant, jointly and severally; and any additional relief the Court deems just, proper and equitable. <u>Id</u>. at 7.

In his statement of Facts, Plaintiff alleges that from June 6, 2012, to November 1, 2012, he was confined in H-dorm of Columbia Correctional Institution (CCI) with red, itchy, puss-filled eyes. <u>Id</u>. at 5. Plaintiff notified Defendant Parrish, Defendant Regar, Officer Joseph, and other officials approximately sixty-two times about his medical condition. <u>Id</u>. On June 17, 2012, Plaintiff attended sick call and told Defendant Parrish that he had puss in his eyes. <u>Id</u>. Defendant Parrish, R.N., told Plaintiff it was due to allergies. <u>Id</u>. Plaintiff declared a medical emergency to Defendants Parrish and Regar on June 21, 2012, complaining of impaired vision. <u>Id</u>. at 6. Although Plaintiff told Defendant Parrish he was a diabetic and feared he was going blind, Parrish

---

[4] The Court dismissed Defendants Donald Davis and Sgt. [Lt.] Joseph from this action without prejudice on September 9, 2016. Order (Doc. 87).

denied the request for a medical emergency, told Plaintiff he was not dying, and walked away with Defendant Regar. <u>Id</u>.

On June 22, 2012, Plaintiff attended a psychiatric call out and saw a registered nurse who diagnosed Plaintiff with conjunctivitis (pink eye). <u>Id</u>. The nurse, while Parrish was in the room, told Officer Joseph and Defendant Regar that Plaintiff was highly contagious and needed to see a doctor, but Joseph and Regar did not take Plaintiff to a doctor. <u>Id</u>. At sick call on July 16, 2012, Parrish made Plaintiff an appointment with a doctor, and Plaintiff saw the doctor on July 18, 2012. <u>Id</u>.

On August 30, 2012, Plaintiff wrote a formal grievance, Request for Administrative Remedy or Appeal, to the Warden referencing the actions of Officer Joseph and Defendants Parrish and Regar. Plaintiff's Exhibit 13 (Doc. 72-5). Plaintiff entitled the grievance "Medical[,]" and described the grievance as a grievance of a medical nature. <u>Id</u>. Plaintiff complained that he has suffered from untreated conjunctivitis since the last week of May. <u>Id</u>. He stated that his attempts to get sick call slips had failed. <u>Id</u>. He said when he did get a sick call slip, Nurse Parrish told him he was suffering from allergies. <u>Id</u>. A nurse did refer Plaintiff to a doctor and told Officer Joseph and Defendant Regar that Plaintiff was highly contagious and needed to get to medical as soon as possible. <u>Id</u>. Plaintiff's counselor put in a referral, but Plaintiff did not see a doctor. <u>Id</u>. Plaintiff

finally saw a doctor on July 18, 2012. Id. Plaintiff complains of vision problems. Id. He said he put in two requests for an eye examination, but as of August 30, 2012, he had not received the requested eye examination. Id.

Plaintiff wrote an unspecified complaint, not on a grievance form, about not being taken to sick call or sick call slips not being processed by Nurse Parrish or Defendant Regar. Plaintiff's Exhibit 15 (Doc. 72-7). Plaintiff states that Officer Joseph and Defendant Regar ignore him when Plaintiff claims he has a sick call. Id. at 1. Plaintiff mentions that he saw Nurse Lancer, and the nurse told him he would see a doctor. Id. Plaintiff describes the grievance as a grievance of a medical nature. Id. at 2.

### IV. Summary of the Arguments

Defendants seek dismissal of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and Fed. R. Civ. P. 12(b)(6). Motion at 1. In doing so, they contend Plaintiff: (1) failed to exhaust his administrative remedies, and (2) fails to state a federal claim on which relief may be granted against Defendant Tucker that is plausible on its face. Id. Defendant Tucker also contends that he is entitled to qualified immunity in his individual capacity for monetary damages.

In response to the Motion, Plaintiff asserts that due to Defendant Tucker's refusal to follow FDOC's policies and procedures, he caused Plaintiff pain and suffering, deprived

Plaintiff of his constitutional right to medical care, and allowed his subordinates to subject Plaintiff to the unnecessary and wanton infliction of pain. Response Two at 21. Plaintiff reasons that Defendant Tucker "cannot ignore a problem once he or she is informed of [it] through a report or appeal." Id. Finally, Plaintiff contends that Defendants Tucker and Regar are not entitled to immunity. Id

### V. Law and Conclusions

#### A. Exhaustion of Administrative Remedies

Defendants assert that Plaintiff failed to properly avail himself of the grievance process with regard to his claims. The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court. Title 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."

In this regard, Defendants bear the burden of proving a failure to exhaust available administrative remedies. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), relying on Jones v. Bock, 549 U.S. 199 (2007). The Court has guidelines for reviewing a prisoner civil rights action for exhaustion compliance:

> Before a prisoner may bring a
> prison-conditions suit under § 1983, the
> Prison Litigation Reform Act of 1995 requires
> that he exhaust all available administrative
> remedies. 42 U.S.C. § 1997e(a); <u>see also</u> <u>Booth
> v. Churner</u>, 532 U.S. 731, 736, 121 S.Ct. 1819,
> 1822, 149 L.Ed.2d 958 (2001). The purpose of
> the PLRA's exhaustion requirement is to
> "afford corrections officials time and
> opportunity to address complaints internally
> before allowing the initiation of a federal
> case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93, 126
> S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)
> (quotation omitted). To properly exhaust, a
> prisoner must "[c]ompl[y] with prison
> grievance procedures." <u>Jones v. Bock</u>, 549 U.S.
> 199, 218, 127 S.Ct. 910, 922-23, 166 L.Ed.2d
> 798 (2007).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1208 (11th

Cir. 2015).

The Court recognizes that exhaustion of available

administrative remedies is "a precondition to an adjudication on

the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530

F.3d 1368, 1374 (11th Cir.), <u>cert</u>. <u>denied</u>, 555 U.S. 1074 (2008);

<u>Jones</u>, 549 U.S. at 211; <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006)

("Exhaustion is no longer left to the discretion of the district

court, but is mandatory.") (citation omitted). The Supreme Court

has stated that "failure to exhaust is an affirmative defense under

the PLRA[.]" <u>Jones</u>, 549 U.S. at 216. Although, "the PLRA

exhaustion requirement is not jurisdictional[,]" <u>Woodford</u>, 548

U.S. at 101, "exhaustion is mandatory under the PLRA[;]" therefore,

"unexhausted claims cannot be brought." <u>Pavao v. Sims</u>, 679 F.

App'x 819, 823 (11th Cir. 2017) (per curiam) (citation omitted).

Also, the only recognized limitation is availability:

> "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).
>
> In Ross,[5] the Supreme Court identified three circumstances in which administrative remedies would be considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Davis v. Sec'y, Dept. of Corr., No. 3:15-CV-649-J-34JRK, 2017 WL 1885366, at *3–4 (M.D. Fla. May 9, 2017).

In reviewing the question of exhaustion, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed

---

[5] Ross v. Blake, 136 S.Ct. 1850 (2016).

- 9 -

his original complaint. <u>Smith v. Terry</u>, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam) (citing <u>Harris v. Garner</u>, 216 F.3d 970, 981 (11th Cir. 2000) (en banc)). Indeed, "[t]he time the [PLRA] sets for determining whether exhaustion of administrative remedies has occurred is *when the legal action is brought*, because it is then that the exhaustion bar is to be applied." <u>Wheeler v. Davis</u>, No. 5:14CV271/WS/CJK, 2017 WL 1029119, at *3 (N.D. Fla. Feb. 6, 2017) (report and recommendation) (quoting <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1324 (11th Cir. 2007)) (emphasis in <u>Wheeler</u>), <u>report and recommendation adopted by</u> 2017 WL 1027035 (N.D. Fla. Mar. 16, 2017).

Therefore, the relevant question before this Court is whether Plaintiff properly exhausted available administrative remedies as of August 11, 2014. The question of availability of the procedure goes to whether the administrative procedure was available before August 11, 2014, prior to the filing of the initial complaint. Construing the exhaustion requirement otherwise would render the PLRA "a toothless scheme." <u>Woodford</u>, 548 U.S. at 95.

Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." <u>Woodford</u>, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to

- 10 -

> give the agency a fair and full opportunity to adjudicate their claims. **Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."** <u>Pozo</u>,[6] 286 F.3d, at 1024. . . .

<u>Id</u>. at 90 (emphasis added). In fact, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id</u>.

The Court must now make findings on the disputed issues of fact to decide whether administrative remedies were available to Plaintiff at CCI, and if they were, whether he properly exhausted his administrative remedies. Since the parties have not requested an evidentiary hearing on this issue and they have submitted evidence for the Court's consideration, the Court proceeds to resolve the material questions of fact based on the documents before the Court. <u>Bryant</u>, 530 F.3d 1377 n.16 (recognizing that a district court may resolve material questions of fact on the submitted papers when addressing the PLRA's exhaustion of remedies requirement).

The Florida Department of Corrections (FDOC) provides an internal grievance procedure. <u>See</u> Chapter 33-103, Florida Administrative Code (F.A.C.). Thus, to determine whether Plaintiff

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 949 (2002).

exhausted his administrative remedies, this Court must examine the relevant documents to determine whether the incidents in question were grieved. If these incidents were grieved and the documents complied with the deadlines and other procedural rules as set forth in the F.A.C., the issues raised therein are exhausted.

The Eleventh Circuit succinctly described this available administrative grievance procedure, including the specialized process adopted for grievances of a medical nature:

> In Florida, the grievance process consists of a three-step procedure. An inmate must first file an "informal grievance ... to the staff member who is responsible in the particular area of the problem." Fla. Admin. Code Ann. § 33-103.005(1). The second step requires the inmate file a formal grievance with the warden. Id. § 33-103.006(1)(a). If the inmate is unsuccessful at this point, he may submit an appeal to the Secretary of the DOC. Id. § 33-103.007.
>
> Medical grievances require only a two-step procedure: the inmate must file a formal grievance at the institutional level with the chief health officer. If the inmate is unsuccessful, he may file an appeal with the Secretary. Id. § 33-103.008.

Kozuh v. Nichols, 185 F. App'x 874, 877 (11th Cir. 2006) (per curiam), cert. denied, 549 U.S. 1222 (2007).

Plaintiff had an available administrative remedy of filing a formal grievance of a medical nature at the institutional level. Fla. Admin. Code § 33-103.008(1), Grievances of Medical Nature. If denied, he could appeal to the Office of the Secretary. Fla.

Admin. Code § 33-103.007(1). Upon review, the inmate is required to attach a copy of his formal grievance and response, except under specified circumstances, to the appeal. Fla. Admin. Code § 33-103-007(5)(a).

Of note, Plaintiff references his August 30, 2012 grievance to the warden concerning a grievance of a medical nature. Plaintiff's Exhibit 13 (Doc. 72-5). Assuming this grievance constituted an attempt to exhaust administrative remedies with respect to the conduct of Defendant Regar, Plaintiff failed to comply with critical procedural rules to exhaust his available administrative remedies by failing to appeal to the Secretary of the FDOC. Thus, Plaintiff did not undertake the second step of the two-step process.[7]

Plaintiff has not demonstrated that he has exhausted his administrative remedies with regard to the claims raised in the

---

[7] Plaintiff, in his factual allegations, alleges Defendant Regar failed to respond appropriately to Plaintiff's declaration of a medical emergency and to see that Plaintiff was sent to a doctor on June 22, 2012, when the nurse told Regar that Plaintiff was highly contagious and needed to see a doctor. Indeed, Plaintiff blames Regar for his inability to see a doctor until July 18, 2012. The Chronological Record of Health Care, however, shows that on June 22, 2012, the nurse referred Plaintiff to the doctor's clinic for evaluation and follow-up after Plaintiff complained about his eye condition. Plaintiff's Exhibit 5 (Doc. 113-1). On June 25, 2012, the doctor, not security staff, made the determination that if Plaintiff's symptoms did not improve, Plaintiff would be scheduled for an appointment. Id. Thus, Plaintiff was not seen immediately for his conjunctivitis based on the doctor's assessment of the relative urgency of Plaintiff's eye condition.

Third Amended Complaint.   Indeed, upon review, Defendants'
supporting documents demonstrate otherwise.   The Declaration of
Lawanda Williams Sanders (Doc. 111-1) shows that the Bureau of
Inmate Grievance Appeals only received from Plaintiff the following
grievances from June 6, 2012, to August 11, 2014, regarding medical
issues: 12-6-19712, 12-6-24005, 12-6-25520, 12-6-27257, 12-6-31186,
12-6-31187, 12-6-32138, 12-6-35380, 13-6-15393, and 14-6-17618.
These appeals do not concern an appeal of the August 30, 2012
medical grievance addressed to the Warden.   None of the grievance
appeals concern the allegation that Defendant Regar denied
Plaintiff medical emergencies or access to sick call or medical
staff.[8]  (Docs. 111-1 through 111-11).

To the extent Plaintiff is claiming that his Exhibit 15 (Doc.
72-7) constituted an administrative grievance, the Court is not
convinced that is the case.   It is a handwritten document, not
written on the grievance form, and it is not addressed to any
particular individual or office.   It is unsigned and undated.   Even
if it were broadly construed to be a medical grievance addressed to
the Warden, the second step of the medical grievance process was
not completed as Plaintiff did not appeal to the Secretary.

---

[8] The Court notes that the July 15, 2012 grievance to the
Warden states that when the nurse told Plaintiff he was contagious
and provided a referral to the doctor, Plaintiff heard the nurse
tell Sgt. Jones to get Plaintiff to medical.  (Doc. 111-4 at 3).
No mention is made of Defendant Regar in this grievance.  Id.

Of significance, if Plaintiff filed a grievance and attempted to exhaust his administrative remedies, he would have needed to submit an initial medical grievance with the Warden, and then an appeal to the Secretary to properly grieve the medical matter in compliance with the procedural requirements of the administrative grievance process. Otherwise, Plaintiff would have to have undertaken the three-step grievance process of an informal grievance, formal grievance, and then an appeal to the Secretary, which he did not do.

Plaintiff has not shown that he complied with the two-step or three-step process. In stark contrast, the Defendants provided a Declaration, the FDOC log records of grievances, and record evidence that Plaintiff did not properly exhaust his administrative remedies with regard to his claim concerning being denied access to medical care.

Based on all reasonable inferences, Plaintiff had access to the grievance process and used the process. Upon review, the Court finds that the administrative process was available to Plaintiff. He has not shown that he properly filed a grievance concerning the events that occurred at CCI and fully exhausted his administrative remedies in compliance with the procedural rules.

In light of the above, Plaintiff failed to exhaust his administrative remedies before filing a lawsuit to seek judicial redress. Therefore, the Court concludes that Defendants' Motion to

Dismiss should be granted for Plaintiff's failure to exhaust his administrative remedies.

## B. Failure to State a Claim

Plaintiff names Defendant Tucker in his individual capacity, and is seeking monetary relief against him. Defendant Tucker moves for dismissal based on Plaintiff's failure to state a claim against him. Motion at 13-18. Plaintiff raises absolutely no allegations against Defendant Tucker in his Third Amended Complaint. Plaintiff's two identified claims are against other individuals, but not Defendant Tucker.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted).

The Eleventh Circuit provides guidance for employing the rigorous standard for establishing supervisory liability in a civil rights action:

> "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's

> actions with the violation." <u>Lewis v. Smith</u>,
> 855 F.2d 736, 738 (11th Cir. 1988) (per
> curiam). Personal participation occurs when,
> for example, the supervisor inflicts the
> injury himself. <u>See</u> <u>Hewett v. Jarrard</u>, 786
> F.2d 1080, 1087 (11th Cir. 1986). A causal
> connection can be established "when facts
> support an inference that the supervisor
> directed the subordinates to act unlawfully or
> knew that the subordinates would act
> unlawfully and failed to stop them from doing
> so." <u>Mercado v. City of Orlando</u>, 407 F.3d
> 1152, 1158 (11th Cir. 2005) (quotation
> omitted). This standard is quite rigorous. <u>Id</u>.

<u>Smith v. LePage</u>, 834 F.3d 1285, 1298 (11th Cir. 2016).

In this case, there is no suggestion that Defendant Tucker personally participated in the alleged violation. As noted previously, he is not mentioned in the statement of facts. The question is whether Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Acknowledging this strict limitation on supervisory liability, the Court recognizes that Defendant Tucker may not be held liable under a theory of respondeat superior. <u>See</u> <u>Braddy v. Fla. Dep't of Labor & Emp't Sec.</u>, 133 F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior).

The Court liberally construes the pro se Third Amended Complaint, but even a liberal construction does not save the day. Plaintiff has failed to state a claim against Defendant Tucker that

is plausible on its face. As noted by Defendants, Plaintiff provides no factual allegations that Tucker violated Plaintiff's constitutional rights, directed any violation, or had any knowledge of any violation. <u>See</u> Motion at 16. Clearly, no liability for damages can be imposed upon Defendant Tucker in his individual capacity merely due to his former supervisory position as Secretary of the FDOC.

In this civil rights action, Plaintiff is required to allege a causal connection between the actions of Defendant Tucker and the alleged constitutional deprivation. <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999). A necessary causal connection can be established if: (1) the supervisor knew about and failed to correct a widespread history of abuse; or (2) the supervisor's custom or policy resulted in a constitutional violation; or (3a) the supervisor directed the subordinate to act unlawfully; or (3b) the supervisor knew that the subordinate would act unlawfully and failed to stop him from acting unlawfully. <u>Harrison v. Culliver</u>, 746 F.3d 1288, 1298 (11th Cir. 2014); <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). But, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." <u>Id</u>. at 1360-61 (internal quotation marks omitted and citation omitted).

Plaintiff has not met this rigorous standard. He does not allege Defendant Tucker personally participated in the alleged

deprivation or denial of access to medical care, nor does Plaintiff contend that Defendant Tucker directed his officers to prevent Plaintiff from obtaining medical care. Upon a careful review of the Third Amended Complaint, Plaintiff does not allege a widespread custom of deprivation of medical care in the FDOC in an attempt to impose liability upon Defendant Tucker. Instead, Plaintiff asserts that the actions and omissions of Parrish, Regar and Joseph were carried out against Plaintiff because "of their hatred" of Plaintiff's offense for which he is in prison. Third Amended Complaint at 6. Indeed, upon review of the Third Amended Complaint, Plaintiff does not allege that Defendant Tucker knew his officers and medical staff at CCI would deprive Plaintiff of access to medical care and failed to stop them from doing so.

Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The Court concludes that Defendants' Motion to Dismiss should be granted with respect to the assertion that Plaintiff fails to state a claim against Defendant Tucker in his individual capacity.

### C. Qualified Immunity

Defendant Tucker contends that he is entitled to qualified immunity. The Eleventh Circuit provides the following guidance in reviewing a claim of entitlement to qualified immunity:

> To receive qualified immunity, [a] public
> official must establish that he was engaged in
> a "discretionary function" at the time he

> committed the allegedly unlawful act.
> <u>Holloman ex. rel. Holloman v. Harland</u>, 370
> F.3d 1252, 1263-64 (11th Cir. 2004) . . . .
> If the official demonstrates that he was
> engaged in a discretionary function, the
> burden shifts to the plaintiff to prove that
> the official is not entitled to qualified
> immunity. <u>Cottone v. Jenne</u>, 326 F.3d 1352,
> 1358 (11th Cir. 2003). This requires
> plaintiff to satisfy the two-part test
> prescribed by the Supreme Court in <u>Saucier v.</u>
> <u>Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150
> L.Ed.2d 272 (2001). Under <u>Saucier</u>, a
> plaintiff must first show that the defendant
> violated a constitutional right and then
> demonstrate that the constitutional right was
> clearly established at the time of the alleged
> wrongful act. 533 U.S. at 201, 121 S.Ct. at
> 2156. If a court, after viewing all the
> evidence in the light most favorable to the
> plaintiff and drawing all inferences in his
> favor, determines that the plaintiff has
> satisfied these two requirements, the
> defendant may not obtain qualified immunity.
> <u>Holloman</u>, 370 F.3d at 1264.

<u>Bryant v. Jones</u>, 575 F.3d 1281, 1295 (11th Cir. 2009), <u>cert</u>.

<u>denied</u>, 559 U.S. 940 (2010). This Court is "free to consider these

elements in either sequence and to decide the case on the basis of

either element that is not demonstrated." <u>Youmans v. Gagnon</u>, 626

F.3d 557, 562 (11th Cir. 2010) (per curiam).

It is undisputed that Defendant Tucker was engaged in

discretionary functions during the events in question. Defendant

Tucker did not violate Plaintiff's constitutional rights and is

therefore entitled to qualified immunity.

Therefore, it is now

**ORDERED:**

Defendants' Motion to Dismiss (Doc. 111) is **GRANTED**, and Defendants **Kenneth Tucker and Robert Regar** are dismissed from this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of September, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 9/15
c:
Robert Cohen
Counsel of Record